United States District Court
Southern District of Texas
**ENTERED**
September 15, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| CENTAURI SPECIALTY INSURANCE COMPANY, § § § § Plaintiff. § § VS. § CIVIL ACTION NO. 4:20-cv-02525 § JOSHUA STEPHEN PHILLIPS AND § SHAWN SABU, § § Defendants. § | |

## MEMORANDUM AND RECOMMENDATION

Before me are Plaintiff Centauri Specialty Insurance Company's Motion for Summary Judgment (Dkt. 22) and Defendant Joshua Steven Phillips's Motion for Partial Summary Judgment (Dkt. 23). Having thoroughly reviewed the briefing and relevant case law, and having heard oral argument, I recommend that Phillips's Motion be **GRANTED** and Centauri's Motion be **DENIED**.

## BACKGROUND

This case concerns whether Centauri Specialty Insurance Company ("Centauri") has a duty to defend and indemnify Defendants Joshua Steven Phillips ("Phillips") and Shawn Sabu ("Sabu") (collectively the "Defendants") in a state-court lawsuit relating to their alleged involvement in a fraternity hazing ritual that harmed a new pledge, Jared Anthony Munoz ("Munoz"). After Munoz filed suit against Phillips, Sabu, and others in the 295th Judicial District Court of Harris County,[1] Phillips and Sabu both claimed coverage under their parents'

---

[1] The underlying suit is No. 2018-05584; *Jared Anthony Munoz v. The Pi Kappa Alpha International Fraternity Inc., et al.*; In the 295th Judicial District Court of Harris County, Texas (the "Underlying Suit").

homeowner's insurance policies with Centauri. Phillips's policy and Sabu's policy (collectively, the "Policies") are virtually identical.

When Phillips and Sabu requested that Centauri provide for their defense under the Policies, Centauri declined to provide coverage. A short time later, on July 17, 2020, Centauri filed this lawsuit, seeking a declaratory judgment that it has no duty to defend or indemnify Phillips and Sabu in the Underlying Suit. Phillips remains a defendant in the Underlying Suit; Sabu was dismissed from the Underlying Suit earlier this year.

Centauri now moves for summary judgment on its declaratory action. Phillips seeks a contrary declaration that Centauri breached its insurance contract by failing to provide him with a defense and indemnity in the Underlying Suit.[2] Phillips also seeks attorney's fees and damages under the Texas Prompt Payment of Claims Act ("TPPCA").

A.     **FACTUAL ALLEGATIONS IN THE UNDERLYING SUIT**

In the Underlying Suit, Munoz brought claims against the Epsilon Eta chapter of Pi Kappa Alpha at the University of Houston and all its members in their individual capacities. This section describes the allegations raised in the 93-page Fourth Amended Petition, the live pleading in the Underlying Suit.

A college student, Munoz was nearing acceptance into the fraternity when he and 24 other pledges began their participation in a hazing ritual known as Ingress, the final challenge before acceptance into Pi Kappa Alpha. The Ingress initiation lasted from 8:00 a.m. on November 17, 2016, until late on November 20, 2016. During this period, Munoz allegedly suffered a parade of horrors at the hands of the fraternity members, including rolling in human waste before cleaning a

---

[2] For whatever reason, Sabu has not filed his own motion for summary judgment or joined in Phillips's motion for summary judgment. Curiously, Sabu's current pleadings in the case contain no claim for affirmative relief, although just this week, he requested the opportunity to amend his pleadings to assert claims for breach of contract and violations of the Texas Insurance Code against Centauri. *See* Dkt. 40. That request is not currently before me.

derelict house; being forced to drink "cookies"—scalding cans of beer that had been heated on a stovetop; sleeping in a human pile in a crowded garage; playing full-contact tackle football without safety gear; participating in a "glow stick game" in which fraternity members tackled pledges in the dark; grueling physical exercise; starvation; dehydration; sleep deprivation; and humiliation; all in a completely foreign environment without the ability to call for help. *See* Dkt. 22-1 at 22–25. During the glow stick game, Munoz's spleen was injured, causing internal bleeding. Ultimately, Munoz was admitted to a hospital. He spent five days in intensive care.

In the Underlying Suit, Munoz seeks monetary relief and damages for a slew of intentional tort claims, including several counts of assault for bodily injury, offensive contact, and threat of injury; false imprisonment; intentional infliction of emotional distress; and deceptive trade practices. *See* Dkt. 22-1 at 84–87. Munoz also brings several negligence-based claims arising from the incident, including negligence, negligence per se, gross negligence, negligent undertaking, and premises liability. *See id.* at 87-92.

The Underlying Suit specifically identifies several individual members of Pi Kappa Alpha for their direct actions which contributed to Munoz's injuries. The house in which Munoz and the initiates were forced to perform rigorous calisthenics and then sleep stacked on top of each other belonged to fraternity members Saman Feyzi Gharagozlou, James Ryan Townsend, and Dylan Robert Williams. Munoz was then taken to another house owned by fraternity member Brian Mendoza, where he was again forced to perform rigorous calisthenics and was exposed to further sleep deprivation. The scalding cans of beer were heated by fraternity member Damian Jellison and served to Munoz by fraternity member Jay Patel. Nicholas Jude Augustine tackled Munoz during the "glow stick game," causing Munoz's spleen to be severely injured, which in turn caused internal bleeding. Munoz complained to Patel that he was in pain, though he did not know he was bleeding internally, but Patel ignored Munoz's complaints. The "fraternity actives" allegedly moved Munoz, who was fading in and out of consciousness by

3

that time due to severe pain, internal bleeding, starvation, and exhaustion, and these actives allegedly insulted Munoz for complaining about his injuries. No other members of Pi Kappa Alpha are mentioned for the individual roles they played in Munoz's injuries and subsequent hospitalization.

Munoz does not specifically identify Phillips or Sabu for their individual roles in causing his specific injuries. Instead, Munoz's lawsuit decries Phillips and Sabu for attending and participating in meetings where hazing events were allegedly planned and for taking part in various events during Ingress.

### B. THE POLICY TERMS

The Policies define the relevant terms as follows:

- "**Bodily injury**" means bodily harm, sickness or disease. This includes required care, loss of services and death that results.
- "**Insured**" means you and residents of your household who are (a) your relatives; or (b) other persons under the age of 21 and in the care of any person named above.
- "**Occurrence**" means an accident, including exposure to conditions, which results in **bodily injury** or **property damage** during the policy period.

Dkt. 22-3 at 4; Dkt. 22-5 at 22. The relevant terms of liability coverage include the following:

> **Section II: Liability Coverage C:**
>
> If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies, we will: (1) pay up to our limit of liability for the damages for which the **insured** is legally liable. Damages include prejudgment interest awarded against the **insured**; and (2) provide a defense at our expense by counsel of our choice even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate.

Dkt. 22-3 at 12; Dkt 22-5 at 30.

The policies also include an exclusionary provision, which states:

> **Coverage C (Personal Liability) and Coverage D (Medical Payments to Others)** do not apply to . . . (b) **bodily injury** or **property damage** which is caused intentionally by or at the direction of the **insured**.

4

Dkt. 22-3 at 12; Dkt. 22-5 at 30.

## LEGAL STANDARD

### A.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). In ruling on a summary judgment motion, I must view the facts and draw inferences from the facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

The movant bears the initial burden of providing the trial court with a legal basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the movant is successful, the burden shifts to the non-movant, who must "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). A non-movant may not simply rely on the Court to sift through the record to find a fact issue but must point to specific evidence in the record and articulate precisely how that evidence supports the challenged claim. *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). *See also United States v. del Carpio Frescas*, 932 F.3d 324, 331 (5th Cir. 2019) ("Judges are not like pigs, hunting for truffles buried in the record." (quotation omitted)).

Moreover, the evidence the non-movant provides must raise more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. This evidence must be such that a jury could reasonably find in the non-movant's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the non-movant is unable to make such a showing, I must grant summary judgment. *See Little*, 37 F.3d at 1075.

### B. TEXAS INSURANCE LAW

When determining whether an insurer owes its insured a duty to defend, Texas courts follow the "eight-corners rule." *Nat'l Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997).

> An eight-corners analysis requires courts to compare only the allegations in the pleadings from the underlying lawsuit to the insurance policy. Hence the rule's name: The contents within the four corners of the pleadings are compared to the same within the four corners of the policy. If the allegations in the pleadings do not give rise to a claim covered by the insurance policy, then the insurer is not required to defend the insured.

*Certain Underwriters at Lloyds, London v. Pagourtzis*, No. 3:18-CV-00271, 2020 WL 8300514, at *2 (S.D. Tex. Nov. 30, 2020) (citing *Richards v. State Farm Lloyds*, 597 S.W.3d 492, 494 (Tex. 2020)). The insurer bears the burden of proving that the underlying action does not fall within the policy's coverage, and all doubts are resolved in favor of the insured. *See Cornhill Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80, 84 (5th Cir. 1997).

In Texas, the duty to defend and the duty to indemnify are distinct duties. *See Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex. 1997). Generally, the duty-to-indemnify question is only justiciable after the underlying suit is concluded unless the same reasons that negate the duty to defend also negate the duty to indemnify. *See id.* at 84. Moreover, "[i]f an insurer has no duty to defend a specific lawsuit, it likewise bears no duty to indemnify the insured against any resulting adverse judgment." *Martin Marietta Materials Sw., Ltd. v. St. Paul Guardian Ins. Co.*, 145 F. Supp. 2d 794, 796 (N.D. Tex. 2001).

## ANALYSIS

Centauri advances two arguments in support of its motion for summary judgment. First, Centauri argues that Phillips and Sabu are not entitled to liability coverage because the allegations advanced against them in the Underlying Suit do not constitute an occurrence, as defined by the Policies. Next, Centauri avers that a policy exclusion applies.

Phillips and Sabu counter, arguing that they meet all requirements for liability coverage and no exclusion to coverage applies. Phillips and Sabu further contend that the duty-to-indemnify issue is not yet ripe for determination. Finally, Phillips argues that he is entitled to attorney's fees and damages on his claims for affirmative relief under the TPPCA. I will address each point in turn.

### A. THE ALLEGATIONS AGAINST PHILLIPS AND SABU CONSTITUTE AN OCCURRENCE AS DEFINED BY THE POLICIES.

The Policies plainly state that absent an applicable exception, coverage shall be provided to an insured when "a suit is brought against an **insured** for damages because of **bodily injury** . . . caused by an **occurrence**." Dkt. 22-3 at 12; Dkt 22-5 at 30. There is no dispute that Phillips and Sabu are insureds under the Policies. There is also no dispute that Munoz brought the Underlying Suit to remedy damages allegedly caused by a bodily injury. The only dispute is whether Munoz's bodily injury was caused by an occurrence. The Policies define occurrence as "an *accident*, including exposure to conditions, which results in **bodily injury**." Dkt. 22-3 at 4 (italicized emphasis added); Dkt. 22-5 at 22 (italicized emphasis added). The Policies do not, however, define what constitutes an "accident." To fill this gap, I look to the Supreme Court of Texas. In *Lamar Homes, Inc. v. Mid–Continent Casualty Co.*, the Supreme Court of Texas focused on the word "accident" within the definition of "occurrence," and held that:

> [A] claim does not involve an accident or occurrence when either direct allegations purport that the insured intended the injury (which is presumed in cases of intentional tort) or circumstances confirm that the resulting damage was the natural and expected result of the insured's actions, that is, was highly probable whether the insured was negligent or not.

242 S.W.3d 1, 9 (Tex. 2007). Stated another way, "[a]n 'occurrence' depends on the fortuitous nature of the event, that is, whether the damage was expected or intended *from the standpoint of the insured*." *Id.* at 16 (emphasis added).

The parties hotly dispute the issue of Phillips and Sabu's intent to injure Munoz. Centauri contends that "Munoz's injuries are alleged to be the result of

7

intentional torts committed by Phillips and Sabu" and Phillips and Sabu "intended to make harmful or offensive contact with Munoz and his fellow pledges as part of the initiation process." Dkt. 22 at 16. Phillips and Sabu reject Centauri's characterization of the Underlying Suit, arguing that the Underlying Suit does not identify Defendants as the fraternity members who directly caused Munoz's bodily injury. Instead, the allegations against Phillips and Sabu are almost exclusively focused on their role in planning and participating in the overall hazing scheme. *See* Dkt. 23-2 at 71–73, 75–77. Phillips and Sabu are quick to point out that the Underlying Suit uses terminology such as "intentionally, knowingly, *or* recklessly" to describe Phillips and Sabu's conduct. *See id.* at 73, 76 (emphasis added). In many places, the Underlying Suit specifically alleges that Phillips and Sabu engaged in "reckless" and negligent conduct. By way of example, the Underlying Suit complains that Phillips and Sabu "recklessly permitt[ed] hazing to occur" through their involvement in the planning and execution of the hazing events. *Id.* at 72, 76. The Underlying Suit also contends that Phillips and Sabu "knew or reasonably should have known" that Munoz had sustained injuries that required emergency medical care. *Id.* at 73, 76. In the eyes of Defendants, these allegations of "reckless" or negligent conduct are important because they demonstrate that Phillips and Sabu did not intend for Munoz to sustain bodily injuries during Ingress. *See Lancaster v. Carter*, 237 S.W. 634, 636 (Tex. Civ. App.—Texarkana 1922), *aff'd*, 255 S.W. 392 (Tex. Comm'n App. 1923, judgm't adopted) ("'reckless' means, among other things, 'careless,' 'heedless,' [and] 'negligent'").

While it is true that Munoz has alleged several intentional torts, he has also alleged several negligence claims. Importantly, my consideration is not bound by the specific labels affixed to his claims. Instead, I must consider the gravamen of the factual allegations, while being careful not to read any claims out of the Underlying Suit. *See Fed. Ins. Co. v. Northfield Ins. Co.*, No. 4:14-CV-0262, 2017 WL 11633133, at *16 (S.D. Tex. Nov. 15, 2017) ("The label attached to the cause of action—whether it be tort, contract, or warranty—does not determine the duty to

8

defend. Instead, a court must focus on the factual allegations rather than the legal theories asserted in reviewing the underlying petition." (cleaned up)); *Allstate Ins. Co. v. Ingraham*, No. 7:15-CV-3212-BHH, 2017 WL 976301, at *10 (D.S.C. Mar. 14, 2017) (examining complaint in underlying lawsuit alleging illegal hazing and cautioning against a "reductionist reading" of the complaint).

The parties also disagree as to whether Munoz's bodily injury was "highly probable" because it was "the natural and expected result of [Phillips's and Sabu's] actions." *Lamar Homes,* 242 S.W.3d at 9. On this point, Centauri argues that "[a]t the very least, [Phillips's and Sabu's] actions—including blindside tackling Munoz while in the dark—ha[d] a high probability of causing serious injuries, such as the ones [he] suffered." Dkt. 22 at 16–17. The problem with this argument is it attributes the discrete actions of other fraternity members identified in the Underlying Suit to Phillips and Sabu. While all the members of Pi Kappa Alpha were involved in some capacity in the implementation of Ingress, only those specifically named in the Underlying Suit in connection with a specific type of harm are alleged to have directly caused Munoz's injuries. Neither Phillips nor Sabu are named in the Underlying Suit in connection with any of Munoz's specific injuries. Centauri's oversimplification of the intentional act of hazing does not consider the intended injury required to pursue a claim for intentional conduct.

In determining whether the allegations set forth in the Underlying Lawsuit trigger an insurer's duty to defend, I must keep in mind a few basic principles of Texas law. First, I am, required to construe the allegations in the underlying pleadings "liberally." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008). Second, I must resolve all doubts regarding the duty to defend in favor of the existence of a duty. *See id. See also Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 368 (5th Cir.2008) (noting that "[t]he rule is very favorable to insureds because doubts are resolved in the insured's favor"). Third and finally, "[i]f a complaint *potentially* includes a covered claim, the insurer must defend the entire suit." *Zurich Am. Ins. Co.*, 268 S.W.3d at 491 (emphasis added).

9

Applying the insured-friendly legal principles described above, as I must, I am convinced that Centauri owes Phillips and Sabu a duty to defend. Remember, the question I must ask is whether, taking into account the lawsuit's allegations, Munoz was expected or intended to suffer bodily injury from the standpoint of Phillips and Sabu. *See Lamar Homes, Inc.*, 242 S.W.3d at 16. By characterizing Phillips's and Sabu's conduct, at least in part, as negligent and "reckless," the live pleading in the Underlying Suit alleges that Munoz's bodily injury potentially resulted from an accident, thus satisfying the "occurrence" requirement of the Policies. Importantly, to the extent there is any uncertainty whether the allegations in the Underlying Suit constitute an "occurrence," I am required to construe the claims against Centauri and in favor of Phillips and Sabu.

Bolstering my conclusion is a recent insurance coverage decision from a South Carolina district court in a similar fraternity hazing case. *See Ingraham*, 2017 WL 976301. *Ingraham* involved a state court lawsuit in which a freshman swimmer at the University of Virginia sued several upperclassmen for their respective roles in an alleged hazing incident. The underlying state-court lawsuit asserted various intentional torts and negligence. One of the upperclassmen defendants involved in the hazing events sought coverage under a homeowner's policy issued to his parents, with policy language virtually identical to that contained in the Policies. Addressing whether there was an occurrence, the South Carolina district court explained:

> Marcantonio pled various causes of action, the alleged injuries from which could not be construed as accidental, e.g. false imprisonment, civil conspiracy, assault and battery, and the like. But those causes of action are not mutually exclusive with the negligence cause of action, which, in plain terms, could have invoked liability for Ingraham for providing too much milk and prune juice to drink, resulting in vomiting. To view the Underlying Complaint otherwise is to artificially read the negligence claim out of the pleading. For the foregoing reasons, the Court finds that the negligence cause of action satisfies the "occurrence" requirement and invoked a *possibility* of coverage under the Policy.

*Id.* at *10. This same reasoning applies to the instant case. Although Munoz has brought intentional tort claims, he has also raised negligence-related causes of action against Phillips and Sabu. The claims are not mutually exclusive. From reading the Underlying Suit, it is conceivable that Phillips and Sabu could be held liable for negligently planning the weekend's activities or recklessly failing to obtain emergency medical care for Munoz. Given these negligence-based claims, there is a potential for coverage under the Policies. That alone is sufficient to give rise to a duty to defend.

**B.   THE POLICIES' EXCLUSION IS INAPPLICABLE.**

Centauri next argues that the Policies' exclusion applies. I disagree. The Policies exclude claims for "bodily injury" that are "caused intentionally by or at the direction of the insured." Dkt. 22-3 at 12; Dkt. 22-5 at 30. As I have described in detail above, the Underlying Suit does not allege that Phillips and Sabu intentionally caused Munoz's bodily injury. I also see no allegation that Phillips and Sabu directed anyone to injure Munoz. Accordingly, no exclusion applies under the Policies.

****

Because Phillips meet all requirements for liability coverage and no exclusion to coverage applies, I find that (1) Centauri owes Phillips a defense in the Underlying Suit; and (2) Centauri breached its contract with Phillips by wrongfully denying coverage under the applicable insurance policy and refusing to provide him a defense against the allegations asserted in the Underlying Suit. As far as Sabu is concerned, Centauri has failed to demonstrate that Sabu is not entitled to a defense in the Underlying Suit; however, because Sabu has not presently made any affirmative claim for relief, I hesitate to say more at this time.

**C.   DUTY TO INDEMNIFY AND THE TPPCA.**

Phillips also seeks a judicial declaration on the ripeness of Centauri's duty to indemnify Phillips in the Underlying Suit and on claims that Centauri failed to provide timely defense and indemnity under the Prompt Payment of Claims Act.

Since the Underlying Suit is still pending, Centauri's duty to indemnify is not yet ripe. *See Colony Ins. Co. v. Hearts with Hope Found*, No. CV H-17-886, 2018 WL 1089225, at *6 (S.D. Tex. Feb. 28, 2018) ("The duty to indemnify is not ripe if coverage turns on facts actually proven in the underlying lawsuit."). The parties will have to wait until the Underlying Suit is concluded—by judgment or settlement—to determine whether there is, in fact, a duty to indemnify.

Now I turn to Phillips's claim for damages under the TPPCA. The TPPCA "provides for additional damages when an insurer wrongfully refuses or delays payment of a claim." *Lamar Homes*, 242 S.W.3d at 16. An insurer "who is 'liable for a claim under an insurance policy' and who does not promptly respond to, or pay, the claim as the statute requires, is liable to the policy holder or beneficiary not only for the amount of the claim, but also for 'interest on the amount of the claim at the rate of eighteen percent a year as damages, together with reasonable attorney's fees.'" *Id.* (quoting TEX. INS. CODE § 542.060(a)). "Based on [my] earlier determination that [Centauri] violated its duty to defend, [I] now find[] that [Centauri] violated the TPPCA by erroneously rejecting [Phillips's] requests for defense and delaying payment of fees and expenses incurred in [the Underlying Suit], and that [Phillips is] entitled to summary judgment on this claim." *Columbia Lloyds Ins. Co. v. Liberty Ins. Underwriters, Inc.*, No. 3:17-CV-005, 2019 WL 2332055, at *8 (S.D. Tex. Jan. 30, 2019). Still to be determined is the amount of damages Phillips is entitled to recover. That issue is left for another day.

## CONCLUSION

For the reasons stated above, I **RECOMMEND** that Centauri's Motion for Summary Judgment (Dkt. 22) be **DENIED**, and Phillip's Motion for Partial Summary Judgment (Dkt. 23) be **GRANTED**.

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from the receipt thereof to file written objections pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall

bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

Signed on this 15th day of September 2021.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE